Good morning, Your Honors. May it please the Court, Matthew Rowan on behalf of the plaintiffs. The basic question in this case is whether the State of New York can resurrect the exact kind of novel nuisance and negligence liability that Congress enacted the Protection of Lawful Commerce in Arms Act specifically to foreclose simply by codifying those same novel theories in a statute that targets commerce in arms specifically. The answer to that question should be clear, no. Because the District Court reached the opposite conclusion, we ask this Court to reverse. Now, in rejecting our challenge to New York's new public nuisance statute, the District Court read the PLCA's predicate exception to mean that states are free to impose whatever type of tort-style liability they want on licensed members of the firearm industry, so long as they pass a statute that says the magic words. The text, context, purpose, and precedent all make clear that that is not what the predicate exception means and that general business law section 898 is not a predicate statute. So I want to start with this Court's decision in the City of New York because I think that the State's argument is fundamentally inconsistent with much, if not most, of the Court's reasoning in that case. So the Court there specifically rejected the argument of what it called the quote, out of context, plain meaning of the term applicable to accurately reflects the figure out what the predicate exception means and what could be a predicate statute that would satisfy that provision. Doesn't that case tell us more about, I mean, obviously it does discuss statutory interpretation, but it tells us a little more specifically about what our Court's view is on what types of statutes fulfill the predicate exception and the fact that it does ultimately come to the conclusion that applicable to means that it's a statute that regulates the firearm industry. And that was the problem in that case. It was a general applicability statute, and so it said, you know, these are the categories that fill it. And one of the things that the Court particularly pointed to was this idea of if the statute is actually specifically geared towards the firearm industry. And so now we have 898, which says that. And so what's the thing that says, well, that's not good enough here? So I think City of New York itself and the PLCA are what says that it's not good enough here. And so that was certainly sort of in the Court's summation paragraph when it said, you know, A, B, and C are the things that can be a predicate statute. Because that statute was just a statute of general applicability, this question of what happens if you just tag on, you know, and it applies to the sale and marketing of the firearm to that sort of statute wasn't at issue there. But the Court in the preceding pages, from pages 399 to 403 of the opinion, makes very clear. So they first specifically reject the argument that it needs to say sale and marketing of a firearm in a statute to be a predicate statute. So it's not necessary to say the magic words. It also makes very clear that is not sufficient. And we know that because what the Court says is, again, we can't take just the out-of-context plain meaning of applicable to. We have to look to, first, the surrounding language, which includes not only the knowing violation requirement, but also the words used in Romans 1 and 2 of the predicate exception, which impose recordkeeping requirements and requirements not to sell to somebody that's a straw purchaser. And those types of statutes impose concrete obligations that dealers and manufacturers can know whether they're on the right side of the line or the wrong side of the line when they're engaging in the conduct. And Section 898 couldn't be more different from that. You know, dealers have a large code book that tells them you have to do X, Y, and Z when you're selling a firearm. And they know if they're putting an entry that this person's 19 when the person's really the recordkeeping type of offenses, or perhaps the other specified one, the straw man purchases. Those are the only ones that are allowable. Those are the only extreme types of regulations that the state could impose. So the only types of regulations are those that are, as this Court said, that are, so It also went on to explain that what Congress meant by lawful commerce was acts done in compliance with the statutes discussed in Section 7901A4, which are the Gun Control Act, the Arms Export Control Act, and the National Firearms Act, which impose things like requirements on who can buy to whom you can sell, what kind of firearms you can sell. All of those requirements are things that a dealer or manufacturer can know on the forefront when they're engaging in a conduct, whether they're on the right side of the line or the wrong side of the line. What Congress was specifically on about in this statute was targeting exactly the sort of liability that Section 898 imposes. There might be hard cases to figure out what, you know, oh, it's something sort of like a recordkeeping requirement or sort of like a, you know, requirement to get a license under the NFA. But this isn't the easiest case possible because they just took their nuisance statute and added magic words to it. And I think it's important to remember that some of the, you know, actions that Congress specifically called out in the legislative history and that Congress mentioned at a higher level of generality in Section 7901 were based on statutes. So it wasn't just the case that all of the pre-PLCAA cases were common law actions. When you refer to adding the magic words, this is a facial challenge, correct? So, yes, this is a facial challenge, although I think we have a differing opinion on what that means, but... Okay, but all that we have are, I'm just confused when you say adding the magic words, all that we have are the words. Correct. Because we don't have an application of the statute yet. Maybe there's some confusion about that. But, so we've got the words. So the fact that these magic words, whether they're magic or not, have been added, seems to respond to the concerns that were outlined in what I describe as what you say is the city of New York, and seems to fit within the predicate concession. So, if you're honest, you think that it fits within the predicate concession? I'm just asking the question. Sure. You said you used this term, magic words, but all I've got are words. Yes. Every word is magic to me, or not magic. Well, so what I meant, to be more precise, is they took the statute that was at issue in section, in city of New York v. Beretta, and they added, they swapped out the word person for gun industry member, and they added through the sale, manufacturing, marketing of firearms. To respond to the concerns expressed in city of New York. So, I think they responded to one of the concerns, but they did not respond to the concern that this court ended the opinion with by saying, to stretch the predicate exception so far, to capture the exact kind of liability theories that Congress specifically set out to inter, would allow the predicate exception to swallow the statute whole. This does not make, as I understand it, but again, certainly you're the expert, this does not, that is, 898, doesn't seem to make gun manufacturers liable, for example, for the acts of third parties. It makes them liable for their own conduct. So that is different, I think in time, from the concerns that animated the overall statute. May I answer your question? Of course, yeah. Respectfully, I don't think that's correct. If you look at the pre-PLCA issues that were premised on public nuisance statutes and public litigation, the allegations there were that the only conduct that the manufacturers were alleged to have done was lawfully sell their products, or lawfully market their products, and the liability that the states, including the state of New York, in the people, extra spitzer, the Sturm Ruger case, sought to impose, they sought damages resulting from the harms caused by third parties, who criminally misused their products. And, you know, that means vicarious liability. You don't get vicarious liability when you've done nothing. But when you are attributing damages to someone else's conduct, and you're just saying, okay, well, you did a lawful thing that is a but-for cause. No, but is that, and maybe I've misunderstood the statute, but I understand that the statute rests on the premise that the gun manufacturer, whatever it is, must itself engage in specific knowing misconduct, or knowing conduct that violates the law. So that is a reference to what a third party does. So that's what the PLCA would require it to say for it to be a predicate statute. But that is emphatically not what the text of this statute says. So if you look at section 898B, so the second section of this statute, and you look at, I don't know whether it's a section or paragraph, but I'll call it paragraph one, and it says, no gun industry member by conduct either unlawful in itself or unreasonable under all the circumstances. So I just want to stop you there. So conduct that is not unlawful can be a violation of this statute if, after the fact, a New York judge or jury decides that it was unreasonable under all the circumstances. So I'm going to go back to the text of the statute. So no gun industry member by conduct either unlawful in itself or unreasonable under all the circumstances shall knowingly or recklessly create, maintain, or contribute to a dangerous condition in New York. I'm going to stop right there. It's not just knowingly. Or recklessly. Exactly. OK. And we have a dispute about whether this statute's cross-reference to New York state law's definition of knowing actually satisfies it. But it's clear that PFCA couldn't be clearer that only knowing violations of a predicate statute count. So at the absolute least, we would ask this court to enter a declaratory judgment that says that to the extent that this statute's based on reckless violations or to the extent that this statute's based on conduct that is not unlawful in itself, that those actions cannot be brought. So would that be a matter of severance? Or how do we do that? No, that would be entering a declaratory judgment telling the state of New York what the PLCA means. And the state of New York would be able to read that judgment. Or we could remand for the district court to craft an injunction that is consistent with whatever we produce. Correct. Yes. And I think that would be... I take it you're saying this statute expressly refers to firearms, but it's not specific. And that sort of puts you in a box. We're sort of saying, well, the two exceptions identified in the federal statute as suitable for predicate statutes are the two that are permitted, which would be record-keeping and straw purchaser. But hypothetically, what if the state of New York said that guns sold in this state have to have a biometric feature, like our iPhones, where it doesn't recognize the face of the person who has the license. Right. They can't be shot. Right. Would that be the kind of statute that would be other than what is in the federal statute that would be specific? Yes. So I want to be very clear about this. We are not arguing that the predicate exception takes the state's ability to regulate away. But we are arguing, as this court recognized in the city of New York, they actually have to regulate. So while my clients may have Second Amendment challenges to the statute that Your Honor just posed, we would not have a challenge to that being a predicate statute. Because that imposes... That's true. Correct, as a PLCA matter. Because that statute imposes concrete obligations that they can know whether they're violating when they do their conduct. So this goes to the, I mean, that's sort of a voice for vagueness argument in part. Well, so, I mean, I think we do have a vagueness claim, and I'm happy to talk about that at the end. But, I mean, I do think that that is exactly what Congress was getting at through the PLCA and the predicate exception. I mean, what the findings in Section 7901 say is the types of liability that the states and cities, including this state, sought to impose on my clients in the late 90s and early 2000s are boundless and without foundation in the 200 years of history of this country. And, you know, one way of thinking about the predicate exception is perhaps it ratchets up the level of specificity that's required for a statute. But to be clear, we don't need to win on our vagueness claim to win on our preemption claim. We do think that this statute has lots of problems, including the fact that, you know, I said before that Section 898b-1 just took the general criminal nuisance statute and added what I called the magic words, but added a specific reference to the fire ministry. It also made one small, but I think important, tweak, which under the general criminal nuisance statute and preexisting common law in New York, you can only be liable for public nuisance for creating or maintaining a nuisance. And Section 898b-1 adds contributing to, which in the context of conduct that is not unlawful, which, again, conduct does not have to be unlawful to violate the statute, the idea that you can really know that you will later on be deemed to have recklessly contributed. Why isn't contribution compatible with the standard under the federal statute? Why is it not compatible with proximate cause? Oh, I mean, for a number of reasons, Your Honor. I mean, proximate cause, as the New York courts themselves recognized in Sturm and Ruger. Proximate cause doesn't have to be the only cause. That's correct. But as the New York courts themselves recognized in the Hamilton case and the Sturm and Ruger case from 2001 and 2003, that under New York's preexisting statutory regime, which looked to cause or maintain, that to try to connect the lawful manufacture or lawful sale of firearms, of lawful firearms, to third-party violence, stretches proximate cause beyond the breaking point because you have an intervening criminal act. You have potentially a number of other intervening actors. And contribution, if you're thinking it's just but-for contribution, everything's a but-for contribution of everything else. And, you know, the state makes this argument that, well, we don't know what exactly the causation standard here means. But if you look at Section 898C and Section 898D, they use the language that results in harm. Resulting in, resulting from, classic but-for-cause language. And, you know, it's just a fact of life that consumers, whether they are law-abiding or not, misuse products. In the firearm context, the consequences of non-law-abiding citizens' misuse almost by definition causes harm to someone in the public. So the federal statute refers to result, resulting from criminal or unlawful misuse of a qualified product. Correct. That would not seem to include suicide. Correct? So I know some states criminalize suicide. Yes, but some don't, and some help. Sure. Yes, and I think in those states that don't criminalize or make suicide a tort, I think that would be correct. So, yes, but I think that's a good example of what Congress was trying to get at with the PLCAA. They wanted states to be able to actually regulate the bad acts of, you know, I hope none of my clients commit bad acts, and I'm not here to say that they have, but, you know, the firearm industry is a big industry. None of my clients commit bad acts. Exactly, Your Honor. It's a big industry. There are lots of federal firearm licensees out there, and some of them are likely at some point to do something unlawful. And Congress, you know, the predicate exception exists to tell states you can regulate them, but you have to tell them what they are supposed to do and not do because otherwise you're just going back to the pre-PLCAA world. And, I mean, I think it's important to underscore that this statute is exactly the statute that New York tried to use before the PLCAA, except they've added the words applicable to the sales and marketing of firearms. And if that's all the PLCAA requires, then the Protection of Lawful Commerce in Arms Act is really the Protection of State Legislators' Ability to Regulate the Firearms Industry Act. I don't think that's what Congress had in mind. Could you just, if I may, I don't want to open up something else, but the district court blew away your argument on the Dormant Commerce Clause by saying that there's nobody making any guns here in New York State, so why would this statute be the kind of protectionist device, as I understand your argument, that's trying to destroy the gun industry nationwide? So that's not protectionist. So I have a legal response and a factual response. The legal response is this statute, on its face, regulates only interstate commerce. I'm not aware of any case on the books that has allowed a state to do that. Even if that's not persuasive, to your honor, factual responses, this was a motion to dismiss, and the district court said that we hadn't pleaded any facts to show that there might be purely in-state commerce, and that's just false. If you look at paragraph 58 of the complaint, we allege that there were 3,800 federal firearms licenses in New York. We cited to the ATF... That they are not manufacturers. They're distributors or... Well, so I'm getting to that. Advertisers or... So some of them are. So we cited and gave the link to the ATF chart that lists them by type of FFL. So there are different types of firing licenses. Six is manufacturers of ammunition. Seven is manufacturers of firearms. As of 2021, when we filed the complaint, 39 manufacturers of ammunition in the state of New York, 284 manufacturers of firearms. So you think New York State is trying to keep its local gun manufacturing companies healthy? I absolutely don't think that's what they're trying to do, but that's what they've done. So I think New York would love it if it could prohibit all gun sales and all gun manufacturing. But the fact of the matter is, we've... The standard is plausibility. On the face of the complaint, it's plausible that one of the ammunition manufacturers sells only in New York. I happen to know lots of ammunition manufacturers across the country sell only in states. So how does that... How does that tie in to the fact that, as I understand it, this is purely a facial reinforcement challenge? So it ties in as following, Your Honor. On the text of this statute, it requires a cross-reference, but on the face of the statute, it regulates only interstate commerce. That's unconstitutional. The state's defense is to say, first, there is no in-state commerce, so we can't be discriminating. And second, somehow, the Dormant Commerce Clause is off the table here, and I'll get to that in a second. And as I just explained, we've alleged, and this was decided in a motion to dismiss, that there is purely in-state commerce. So on our allegations, on the face of the statute, it discriminates against interstate commerce, and there is in-state commerce to favor. That's all that we need to establish to defeat a motion to dismiss on that. Now, the state makes the separate argument that the PLCA's predicate exception itself gives them the freedom to bypass the Dormant Commerce Clause, and that argument was squarely foreclosed by the Supreme Court in 1985 in the New England Power case, where the Supreme Court looked at a preemption statute, and they said, savings clauses do not give states any new power to regulate or burden interstate commerce. They just save whatever authority the states had before. And that's the only authorization to which they've pointed here. Is your Dormant Commerce Clause argument based solely on the definition of a subject gun? Our discrimination claim is, yes. So we have three flavors. You can have other Dormant Commerce Clause. Yes. So we have what I like to think of as flavors of the Dormant Commerce Clause with three different theories. So the first is discrimination, which is the one I just outlined. So the second is... What do you mean termination? Discrimination. Discrimination, yes. Excuse me, I'm sorry, which is the one I just outlined. The second is what's called pike balancing, which looks to the differential burdens and benefits. Yeah, but if you look at differential burdens and benefits and you think in terms of Ross, it's really, to use the phrase, incommensurate to compare the health of the gun industry with the lives of the citizens. So that was certainly Justice Barrett's view in her concurrence, but there were at least five votes to keep the sort of pike standard that existed before, because if you look at Justice Sotomayor and Justice Kagan's concurrence, their votes were necessary. They're all keeping the pike standard. They're just saying it has to be some of them are saying it has to be commensurate. Correct. Justice Barrett would have been the sixth vote, though. So all I'm saying is she's the only one who said that. And because the other part of the Gorsuch opinion that said that is not joined by a majority of the court. So you had protectionism or discrimination. You have... Right. You have the... Different burdens and benefits, right? Which again, this is a motion to dismiss and fact intensive. And the third one is direct regulation of out-of-state commerce. So that argument or that objection to the statute would subsist even if a gun was defined, a firearm is defined in a way that did not require that it travel into state commerce. That's correct. So our direct regulation of out-of-state conduct claim, which is not the same claim that was at issue in Walsh. At issue in Walsh was an extraterritorial effects claim that law only regulated the in-state sale of pork. And the court in footnote one made very clear that laws that actually directly regulate out-of-state exceed the territorial limits of state's authority under the constitution. Well, it's easy to exaggerate how effective that distinction is. It's certainly a fine distinction. It's a constitutionally important distinction, though. And I think it's very clear here. If a manufacturer manufactures its firearms out-of-state and that is deemed to have contributed, even though it's not defective, even though it was lawful where it was made, it was lawful where it was sold, and that's deemed to have contributed to a nuisance in the state, that's direct regulation out-of-state. Even more directly, if you look at... So, you know, with respect to this direct regulation out-of-state, this extraterritorial conduct basis, and I know that there's some prior case law from the Supreme Court that has suggested that it's a viable part of the pike balancing analysis, but it seems to me that the Supreme Court has retreated from that. So, it's retreated from plaintiff's attempt to stretch it beyond where the doctrine ever went. Well, isn't that what you're trying to do? Respectfully, no, Your Honor. So, the statute that was at issue in Ross, all it did was directly regulate the in-state sale of pork. You could... So, the out-of-state pig farmers could not be sued under Proposition 12. That's extremely different on a constitutional level from allowing manufacturers to be sued under, let's look at Section 898b-2. For instance, failing to institute reasonable controls on their manufacturing. So, reasonable controls here is defined to include policies intended to prevent thefts. Just pick one at random. There are lots. And if a manufacturer, you know, if someone came to the manufacturer's facility in Ohio and they were able to steal one product, under the text of this statute, New York could sue that Ohio manufacturer as long as that manufacturer sells any of its products in New York. That's direct regulation of out-of-state conduct. And on our extraterritoriality claim, again, I said we have a little bit of a different opinion on exactly what a facial challenge is. This is a facial challenge that would only extend to the extent the state were to apply the statute to out-of-state conduct. The Fourth Circuit made very clear, and the Ninth Circuit in the St. Francis case, which used facial as applied in the same sentence that they're holding, that that's the correct way to think about these claims. And this court did essentially the same thing in the bookseller's case. But again, I don't think the court would see... I think the court understood a facial reinforcement challenge in other contexts as a challenge that places on the plaintiff making the challenge the burden of showing that the application of the statute in every application would be improper. So I would... So we cited the Doe v. Reed in our reply brief in the Supreme Court case, where the Chief Justice's opinion at page 194 explains sort of these sort of hybrid as-applied facial claims. And what he says is, you have to show the standard for a facial claim to the extent of the allegedly unconstitutional reach. So under our extraterritoriality claim, the extent of the unconstitutional reach, assuming we lost everything else, is just with respect to applications... So that goes back to my question. So that's the tie with respect to the extraterritoriality. Correct. Correct. Thank you, David. Thank you. I'm far over my time. No, no, that's because you're answering our questions. Very much appreciated. Thank you. We'll hear from your friend on the other side. Mr. Fan. Good morning, Your Honors. May it please the Court, Dennis Fan on behalf of the State of New York. Congress, in enacting PLACA through its Commerce Clause powers, entrusted the regulation, the sale, and marketing of firearms to the legislative processes of the state and federal governments. My friend on the other side said, this is, you know, you might as well call PLACA the Protection of State Legislatures Act. But PLACA, through numerous separate provisions and not just through the predicate exception itself, evinces a purpose to, in fact, protect the ability of state and federal governments to enact legislation that regulates firearms. It does through several provisions, through several exceptions, including through negligence per se exceptions under PLACA. It does through these 924H comparable or identical state law exceptions under PLACA. And through the predicate exception itself, it allows states to regulate any sort of statute applicable to the sale or marketing of firearms. And that's exactly what we have here. Now, PLACA is a compromised piece of legislation. It was passed bipartisanly. And it has those types of features because presumably some Congress people believe it. So the plaintiff's counsel, Mr. Roman, pointed out that at least with respect to the text, called PLACA. PLACA? I call it PLACA, PLCA. How about the federal statute? Federal statute, right. There's a federal statute and a state statute. We'll call it the federal statute. Refers only to a knowing violation, while 898 refers not just to knowing violations. It has a recklessness element to it. I want to give you two answers to that. The first answer, of course, is that this is a facial challenge. What they're claiming is that there couldn't be any sort of lawsuit that could possibly allege a violation under the state statute while also fitting into PLACA. Now, what we say is, in fact, you could allege a knowing violation under the state statute. But the second-layer answer, to get to your honors question more directly, is recklessness under the statute, if you look at 898A, is defined as criminal recklessness under the state penal law. There's an old case called People v. Clayhurst. This is at 72 NY 2nd, 737. And I'll read to you directly. It says the term... I'm sorry, what is it? 890, or 72 NY 2nd, 737. It's a New York Court of Appeals case. And it says the term unintentional crime is something of a misnomer when applied to the crime of recklessness, crimes that involve recklessness, and that's a crime that involves reckless manslaughter. What you have when you have criminal recklessness is you have, at least under the state penal law, an awareness of facts as well as a conscious disregard of them. Now, the Supreme Court, not the state Supreme Court, but the U.S. Supreme Court, has also said in cases where knowledge under a federal statute is undefined, all that means is awareness. But under the statute, what is barred is conduct that recklessly contributes. I mean, once you strip away all of the other verbiage, you have recklessly contributing. That doesn't seem like much of a burden. It doesn't seem like proximate cause. I think you have... I mean, you have the proximate causation, as your Honor pointed out, because of the resulting in-language, but also through other features of the statute that demonstrate that there needs to be a linkage between the gun manufacturer's conduct and the resulting harm. But what you have with PLCA is you have a statute that says you need to have knowledge for a lawsuit to proceed. So if anyone brings a lawsuit under this New York statute and they don't show knowledge, that lawsuit needs to be dismissed. Now, there are instances where individuals can engage in unlawful or unreasonable conduct knowingly. Now, that's maybe the rub of it, which is that... My friend on the other side, I think that this is so vague and so general that there couldn't be any instance where you would knowingly engage in unreasonable conduct. You're saying that... I mean, I agree with you. There certainly would be instances in which one would know that one is engaging in a knowing violation, but surely there would be instances in which you would engage in violations that you could guess at, but you wouldn't know. So I think that's exactly why we don't deal with this in the context of these sort of facial challenges, which is that there may be lawsuits out there under a New York statute that completely satisfy New York statutes and completely satisfy... You're saying that lawsuits... Though lawsuits continue, but you raise a defense, how am I supposed to know that I can't do this when it's not expressly or specifically provided for in the statute? Two answers, Your Honor. Yes, you do raise a defense, but that's exactly what PLACA contemplates. PLACA targets qualified civil actions. It preempts causes of action. It preempts these cases that are brought. It doesn't just preempt state statutes on its face. The second... It doesn't just preempt state statutes. It doesn't preempt state statutes. It preempts actions. That's right. It preempts tort actions. It preempts these sorts of causes of action. And the second answer to that is I don't think what New York is targeting here is some sort of undefined, unreasonable, vague, abstract sort of liability. You have cases like Soto from the Connecticut Supreme Court that talk about unreasonable practices of the firearms industry, such as using gore or violence in the marketing of firearms. And so when you have advertisements that gore and violence... New York has brought a case against the manufacturers of... If the advertising glamorizes the illegal use of the gun... That's... Exactly. You have automobile advertising where people are speeding all over the place and doing all kinds of dangerous things. You know, it's very difficult to know why that is a specific thing that people ought to know if they're violating it. Well, the New York statute does also spell out... I mean, in 890 AD, it spells out the sort of reasonable controls that you need to have, and it talks about security controls. It talks about controls about not allowing straw purchasers of record-keeping. And so those sorts of reasonable controls are all specific things that... But when you talk in terms of reasonableness, you're talking in terms, usually, of a jury determination, correct? When you're talking in terms of reasonableness, not always. I mean, judges... Not necessarily. Not necessarily. I mean, judges can... It's a question of law. But reasonableness is usually a question for the fact-finder. And I think PLACA tries to help take care of that. I mean, PLACA tries to say, look, this needs to be something that's a knowing violation that also results in proximate cause. Congress put up those sorts of guardrails, but it didn't put up further guardrails on what kind of state statute this needed to be, other than the fact that this needed to be a state statute that was applicable to the field. You're citing a federal statute, but you're really relying upon the exception. I mean, the exception and the... I mean, the main provisions of the statute and the exception all event to the same purpose as the statute. They're part and parcel to the same thing. But one of the findings is to avoid the possibility of imposing liability on an entire industry for harm. So you're talking not about preventing the... Not about providing people with a defense in a litigation, but preventing the litigation itself, because Congress made it quite explicit that you can destroy an industry just by litigation. And of course, it happens. Opioids and asbestos and so forth. And so I think if you... I mean, you're quoting from subsection six of the purposes. If you look at the very next subsection, it talks about that sort of liability expanded through a maverick judicial officer or through a petite jury. That's not what you have here. Congress was concerned not only with the ends of protecting the firearms industry, but the means of doing so. And the means of doing so here were to prohibit these sort of common law causes of action while permitting federal and state governments to continually enact the sort of statutes about the sale of market firearms. Yeah, but what is... I guess, can you give me an example of a type of statute that New Yorker passed regulating the gun industry that would not, in your view, fall within the credit exemption? Sure, Your Honor. So, for instance, you have this case from the District of Columbia that was early in the blackout. It was a strict liability statute. So if you had a statute that said anybody in the firearms industry needed to pay $10,000 a day to a fund within the state, I think that's a statute that doesn't actually target sale or marketing activity. That's just a strict liability statute that says regardless of what activity you've done, regardless of what wrongful conduct you've engaged in, regardless of... So, in answer to my question, you agree that the blackout, the federal statute, applies to actions, not statutes. And so what does it matter if the statute is a strict liability statute? Is it because it necessarily implies an action based on strict liability? Is that how you... I think that's right. This is all a little odd because it is pre-enforcement and we're just talking about the... I think in that sort of situation, the question you'd ask is is every sort of action I would bring under this statute an action that would be preempted under one that pocketed man that I would dismiss? And at least in that strict liability setting where you've essentially erased all the elements of a violation off the table. Practically speaking, that would be the result. Practically speaking, that would be the result and it'd be difficult to think of. You can't think of a lawsuit that has a negligence element in a strict liability case. But here, at least, we specify that there's not only unlawful conduct at this target. It's not only about these reasonable controls and when... So, if we were... This is just a hypothetical. Don't worry, Mr. Fisher. If we were to disagree with you with respect to the recklessness component of 898, what do you think we should do? Understanding the common law language that you resort to. I think if you disagree on just the recklessness point, I mean, of course, we also think that they've forfeited this argument by never raising it below, so there would be nothing for this court to do about that specific point. But if you still, nonetheless, disagree on the recklessness point, I think you'd leave it to an action and you'd deal with this, whatever minute delta there is, if there is any delta between criminal recklessness under state law and the federal definition of civil recklessness, and you would think, what is exactly that case where that issue would even come up in? And I have a very, very difficult time imagining what that case is. I mean, the U.S. Supreme Court, as I said, throughout various cases, including just two terms ago in a case called Intel v., or Unicolor v. H&M, said federal knowledge can involve an awareness, but it can also involve a willful disregard of risks, and that's federal knowledge. So when you're talking about state criminal recklessness, I don't see what the delta is. I appreciate the argument, which is that the federal statute is referenced knowingly in the security context, for example, that could actually encompass reckless behavior. And so I appreciate that, but I was just asking the question of what to do with the disagreement. And I think you would say, as a whole, the statute doesn't itself on its face violate the predicate exception. There may be instances where a party doesn't demonstrate knowledge up to the federal standard in an individual case, but nonetheless demonstrates criminal recklessness under the state standard. And in that sort of case, we'll deal with it on a case-by-case basis. But when you deal with it on a case-by-case basis, then you are bumping up against the findings that the possibility of imposing liability on an entire industry. The harm is the reason that the federal statute, it's one of the reasons the federal statute was enacted. And you sort of do have the problem that the governor who signed the bill said, oh, this is great. This is an opportunity to undo the federal statute. I think what the governor meant in that sort of instance was that we were trying to comply with the words of the predicate statute. We were trying to say, this is, we're allowed to... He said, undo the mistake that Congress made when they passed the statute. And it's a very unusual preemption case where what amounts to the signing statement of the governor is that here's a nice preemptive statute that we're enacting. This is why you're allowed to test. Of course. Also why we're relying on the text your honor. But... But of course, the main point here is that even with regard to the idea that you'd have some sorts of lawsuits that are brought against the firearms industry or against firearm sale and manufacturers, Congress didn't mean to impose blanket immunity. It set up a very powerful threshold defense that these gun industry members could raise in a motion to dismiss sort of setting. It isn't blanket immunity. I mean, it has examples of the kinds of statutes that would fit within the predicate exception. And your adversary concedes it could be almost anything. I made up a fanciful one. He said, that's possible. I don't think it could be anything. As I was answering to Judge Lee, any sort of statute, that fits within the predicate exception. And of course, Congress knew full well by building in these sort of exceptions that the exceptions would be litigated. If you have a statute with a number of exceptions and somebody says, well, I fit into an exception, that's not undermining the purpose of the statute. That's only furthering exactly what Congress had in mind. Well, you would agree that exceptions to a statute are more narrowly construed than the statute itself. I would not agree with that, your honor. I mean, the Supreme Court has made clear, even as recently, I think there's a case called Argus-Weider. And they say, the statute, just like the main text, the statutory exceptions, just like the main text, are interpreted according to their plain language. And I think here, Beretta makes very clear to what that plain language does mean. That plain language is any sort of exception. But the only exceptions allowed are applicable. And we have already said in City of New York versus Beretta, that that is a, that word is subject to a contextual interpretation. It is subject to, I mean, all statutes are sort of right in context, but at the end, I know my... Everything is everything. By everything, it says that it was just the summation paragraph. I beg to differ, but it's the holding paragraph of City of New York v. Beretta where they say, if it's a statute by a state or federal government that is explicit about the saler marketing of firearms, that's otherwise clear that it's about the saler... It has large words, yeah. Yeah, I mean, if it's explicit... It's expressed, expressly and specifically. So they're using two different words. I assume that, I mean, we're not paid by the word here. So, presumably, there are two different meanings. It is expressly, when the statute expressly does refer to the firearms industry, but is it specific in its prohibitions? I mean, it is specifically about the saler marketing of firearms.  other than the saler marketing of firearms. It's about unlawful, non-reasonable conduct and the saler marketing, and there's an added clause about the types of actions, which are those that cause a nuisance or cause dangerous conditions in New York, but the underlying conduct is saler marketing. Similarly, in that second provision of 898B, that's also about the sale, manufacturing, and selling of firearms and the reasonable controls that you need to engage in in that specific context. So I think if Your Honor is concerned, there might be some statute out there, and I'm giving the strict liability example again, but there might be some statute out there that's expressed that says anybody who, you know, says they're a seller or a manufacturer, you're liable for $10,000 a day. That might not be specific to their selling and manufacturing activity, but it's still expressly about the sale and marketing of firearms, and I think that's as far as this Court's decision in the City of New York v. Beretta went on that point. Let me just turn briefly to I think mostly what you've discussed with us as an answer to our questions relates to preemption. On the dormant commerce laws issue, one of the things, I think one of the industries from Montana says the law 898 applies, only applies, applies only to makers and sellers outside of New York. Is that correct? Not the case, Your Honor, and I actually do want to clarify some of the facts of this case. My colleague on the other side said something about there being in-state federal firearms licensees, and there are in-state federal firearms licensees, but when you're an in-state FFL, you are by federal definition permitted to engage in interstate commerce. So the basic question here and the basic point of distinction is whether this treats in-state FFLs to engage in interstate commerce differently than out-of-state FFLs, and it simply doesn't. If you're an in-state federal firearms licensee and you engage in the sale and marketing of firearms, our position is there just really isn't an in-state FFL that has purely in-state firearms. I thought your brief or some letter said that there really are no manufacturers of firearms in New York State, so to the extent that you're regulating manufacturers, you're regulating manufacturers outside New York State only. Um, I mean, my colleague on the other side said there could be, you know, at certain instances, some manufacturer of ammunition. I'm not aware exactly of what manufacturers, so one thing to note... Well, here we go to the state, and if the state thinks that there are no domestic manufacturers of guns, then this regulation of manufacturers only bites manufacturers outside New York. One thing to be really, I think, clear about here is it's not just the manufacturers of guns and ammunition. A qualified product, and Congress intentionally made this extraordinarily broad, a qualified product includes any component parts of a firearm or an ammunition. So if you, you know, manufacture a piece of... This is why I can't answer this question because if you manufacture a piece of vulcanized rubber and you ship it out of state and somebody else attaches it to their firearm, that's also considered a qualified product. And so what you have is, you know, maybe there's no in-state gun manufacturers, but I can't make the representation that no single tiny piece, no spring, no hammer, no trigger of a firearm is ever manufactured in New York, and I think that's  that they have been correct about this sort of... If that liability, if that liability is contemplated in this statute, then nobody who makes rubber products or other kinds of products in New York would dare to do business with a company that makes firearms. Correct? I don't think that's quite right. Of course, you'd still have to show that... It's not quite right, but it's basically right. Yeah, I don't think it's basically right either. You know, I feel like people use quite in this way, so... Everyone has a different definition of quite, but that's not... I don't think that's right at all, John. I think... Let's say you manufacture like small springs and, you know, some of them go into toys and others you sell to gun manufacturers and you have no idea. I'm just thinking your example, which is that people  in New York would be subjecting themselves to extraordinary liability in this state in litigations if they supply parts to people who make innocuous products to companies that make firearms. Of course, you still have to go to this sort of proximate cause requirement. You still have these knowledge  that are set up. I mean, the sort of lawsuits that New York State has brought so far are, for instance, lawsuits against gun manufacturers which involve completely untraceable parts where individuals are getting shipped these parts into New York State and those parts are then being used to assemble together pieces. And I think those sort of manufacturers, when they ship parts into New York to become untraceable... Well, there is no manufacturer, right? Because you just have a bunch of parts and somebody is putting them together. I mean, I would consider somebody in his garage is a gun manufacturer. I mean, I'm not actually sure about that. You might consider that person as manufacturing a firearm by taking various pieces of firearms and putting them together and creating a firearm out of it. And so, in those sort of instances, you may well have instances where it's actually pretty clear that the manufacturer... I cook dinner, but I'm not a restaurant. So, I mean, you're really, you're kind of pushing these definitions and demonstrating, I think, just how flexible they are. Well, I don't think the definitions themselves are flexible. The main point is the definition is extraordinarily broad. The definition of qualified product essentially captures everything. It captures in-state businesses and out-of-state businesses. And for purposes of the Torment Commerce Clause, for purposes of just that, if you're regulating in-state businesses and out-of-state businesses alike, you're not engaging in a violation of the clause. You're not engaging in facial discrimination. And just because it says interstate commerce in the federal definition, of course, New York was trying to incorporate that federal definition so that it could comply with PLACA. But just because it has those words, interstate commerce in  definition, doesn't mean that you're treating in-state businesses and out-of-state businesses differently, which is the relevant point of distinction. And now the Supreme Court has made that point, too, also very clear. It's not about the words when it comes to the Torment Commerce Clause. It's about the substance of regulation. So in the Associated Industry of Missouri v. Lowman, and this is at page 654, it says a purely nominal distinction in a state statute between the methods of regulating interstate and interstate commerce could be constitutional as long as it isn't translated into a difference in substance. So if New York State, for instance, passed a statute that said we're not going to buy pineapples from Maine, well, there are pineapples grown in Maine. Maine is in a tropical location that might have some facial discrimination on the face of the statute, but it doesn't actually in substance do anything. It doesn't in substance treat in-state and out-of-state businesses differently. I'm going to turn a little bit, unless there are any more questions on that, to what Mr. Roman mentioned with respect to the extraterritorial application issue as a matter, I guess, of the government commerce clause and the right balancing. And there's a provision in 898 that states that  government has to adopt practices to prevent deaths of qualified products, or I guess they have to enact reasonable measures to prevent death. Is that the way to read it? That's the way you would probably read it. It's reasonable control, so those include not every possible measure under the sun, but here's a list of possible measures. And why does something like that mean reasonable measures, and why doesn't something like that have a purely extraterritorial effect? Two answers, and just answering first what it means to have reasonable controls. For instance, when you have reasonable controls about deaths, there are already federal and state statutes that require you to keep your gun in a secure locked location. Same with straw purchasers. There's federal statutes that say you need to prevent straw purchasers. You need to engage in some sort of background check. They need to be in interstate control.  to be in a safe environment. The second thing I'll say about their extraterritoriality, of all of their challenges, this is really the one that is least proper in a spatial setting. If you look on page 47 of our brief, there's a lot of citations, but we talk about how they have declarations filed with their motion for preliminary injunction below about all of their connections and all of their doing business in New York state. For instance, Beretta has a store front. If you're talking about extraterritorial effects, you're dealing with hypothetical possibilities that have no bearing on what the facts of this case in particular are. I think even if you're thinking about some purely out-of-state business that never touches New York, that has no connection at all to New York, the Supreme Court has made very clear, and I do think the producer is quite clear about this, that the extraterritoriality doctrine is quite limited. And that's because almost any sort of state statute is going to have some extraterritorial effect on out-of-state conduct. Just take product liability statutes or causes of action, for example. If you say, well... Is it your interest more broadly? Is it the state's position that this extraterritorial application effect test still persists, is still there as a matter of pipe balancing? I think it's different than pipe balancing, and I think the Supreme Court treated it differently than pipe. It is different. And I think it still persists to the extent that the Supreme Court said it persists, which is with regard to out-of-state price control. So if you say the price on out-of-state milk is going to be such and such amount and we're going to impose a tax on milk coming in from out-of-state, those are sort of the extraterritorial conduct or interstate commerce that it was concerned with. So that passage in Justice Sotomayor's  that was a very controversial type of doctrine. Not relegated to milk, but relegated in large part to these sort of price control measures and similar types of measures. And this is not anywhere close to that. And what you have here is that we're not trying to regulate out-of-state businesses differently than we're trying to regulate in-state businesses. The whole point of Dormant Commerce Clause jurisprudence is... Does it have to be different? I mean, if you're going to regulate out-of-state businesses, regulate an entire interstate industry, that might itself implicate the Dormant Commerce Clause. Let me give you a hypothetical. Let's say a gun is manufactured by a manufacturing company in Texas and it is sent to a distributor in Missouri that sends it to a dealer in Delaware, which sells it to somebody who exchanges it for cocaine in New York and the gun is used here. Is that something that could be the subject of this lawsuit? I've had a very difficult time tracking the sort of process causation element in that type of hypothetical. I think it started in Missouri and ended up somewhere else in New York. That's what we're talking about when we're talking about a nationwide industry where things go from manufacturers to distributors to retailers and so forth. I think for the Dormant Commerce Clause and for Dormant Commerce Clause purposes, that consideration actually counsels exactly the opposite way. What if the manufacturer did not comply with a procedure required for the manufacturing of guns in New York? If the manufacturer knew that they were violating New York statutes, if they wrote a letter to their friend being like I'm about to ship this to Missouri, to Canada, to New York. What if they simply knew because they're in New  that they were violating New York      they were violating New York statutes, if they wrote a letter to their friend being like I'm about to ship this to Missouri, to Canada, to New York? If the manufacturer knew that they were violating New York statutes, if they wrote a letter to their friend being like I'm about to ship this to Missouri, to New York, if  manufacturer knew that they were violating New York statutes, if they wrote a letter to their friend being like I'm about to ship this to Missouri, to New York? If the manufacturer knew that they were             to ship this to Missouri, if manufacturer knew that they were violating New York statutes, if they wrote a letter to their friend being like  to ship this to  if manufacturer knew that   violating New York statutes, if manufacturer knew that they were violating New York statutes, if manufacturer knew that they were violating New York statutes, if manufacturer knew that they were violating New York states, we understand them. And so that, I don't think is a dormant commerce clause problem to have states continue to do that type of regulation. I'm well over my time. Thank you. I will do my best to be very brief. I want to be responsive to your honor's question. Our primary challenge is that the New York statute cannot be a predicate statute. If it cannot be a predicate statute, all actions brought under it would not be saved by the predicate exception. That's a perfectly proper facial challenge. It's a perfectly proper thing to seek under the declaratory judgment action. I have no questions. We're intended to castigate facial challenges. We see that all the time. When a plaintiff makes a facial pre-enforcement challenge, that has implications and consequences  decisions from the Supreme Court. I'm trying to understand what the challenge is. Our challenge is that the New York statute is not a predicate statute and cannot be used as such. Because it goes beyond knowing because and on and on. A few more quick points. Your honor looked at the reasonable controls provisions. It does not. It says you need to have policies designed to accomplish certain ends. There was a brief that was filed by a professor that looked at specific types of policies. If New York wants to pass a statute that says you have to do X, Y, and Z, that would be a predicate statute. Saying your practices need to be reasonable so later on we can figure out even if you complied with all the rules and regulations. This is back to the predicate exception of argument. Quickly, my friend at the very end of his argument said they would need to show they knew they were violating the New York statute. And that is the rub of the matter. Because what the predicate exception says is you need to show a knowing violation of the statute. And what New York section 898 requires is just knowing conduct. Reckless conduct. You just have to know that you did the thing and that there is a downstream risk of harm. That is nowhere near enough to establish a knowing violation of a law. And that knowing violation language from the PLCA really is important. So in other contexts, knowingly, you know, it's a funny word in federal statutes and somewhat fuzzy word, but Judge Fanley and others have maybe in the securities context described it as somewhat less, in a somewhat less powerful way than you described it, which is I know that my conduct is violating a statute. It doesn't say violating a specific statute, but violating a statute somewhere. As opposed to, you know, if you're intentionally or you are willfully violating something, so what, and I'm just reading the language, product knowingly violated a state or federal statute applicable to the sale or marketing of the product. And it's, there's not a lot of dealing, but maybe I'm wrong, between knowingly violating a specific provision and knowingly violating a statute. Correct, but usually in statutes, knowingly applies to specific conduct. Usually it says you can't knowingly sell something unlawfully. It says the conduct. This says knowingly violates a specific statute. Correct. And what we are saying is this specific statute, the one we are challenging, cannot be a  statute, cannot satisfy Is there a case that says that, that interprets the federal statute in that language about knowingly violating a state or federal statute in the way that you are advancing? Yes. So the district court opinion in the NSSF New Jersey case, in full candor, that opinion was vacated for lack of standing by the third circuit, but yes, the district court opinion in that case read the predicate exception in exactly that way. It follows from normal principles of interpretation, the case from the Supreme Court that said where the conduct after it go together and here the conduct is not conduct in the world, it's violating a statute. I don't know how a manufacturer can know when their conduct is not unlawful in itself, that they are nonetheless violating the statute. I think it's really important to take it back to the text of the New York law. A manufacturer or seller. Of course, if they refer to specifically knowing violation of the statute, you have other arguments. I do, but I don't think I would have a good predicate exception argument. Because if it listed a bunch of other statutes that are on the books, that are susceptible to actually you know whether you're in or out at the time, I think we'd have a pretty terrible predicate exception argument. But this doesn't do that. This doesn't tell anyone what they need to do. This allows for regulation via adjudication. Which is exactly what Congress set out to foreclose. The 9th circuit in the case which was decided a year after this case made that very clear. They said what Congress was on about was stopping sort of after the fact adjudication in these cases because the way it works is you bankrupt the whole industry if you're allowed to say after the fact it turns out sales and manufacturing weren't reasonable. Two more quick points. I know I'm far over my time. Two more quick points. So we know that  doesn't have exactly what the state wants to do with this statute because they've intervened as a plaintiff in one of the cases against one of my clients. The allegations in that case are that one of my clients violated section 898 by not training dealers to avoid illegal transactions. There's no statute anywhere requiring them to do    by refusing to terminate dealers with a high number of traces. Even if they did do that they wouldn't be able to get away with it. Even though there are some states that specifically forbid manufacturers from cutting off dealers just because of traces. None of those allegations is compatible with the idea that someone knew they were violating this statute. So New York was the first in 2021. There are now seven. They're all currently being litigated. So there's New York, there's Delaware and New Jersey. NSSF challenged both of those. They're both dismissed as illegal transactions. The main distinction between those cases and this case, of course, is that there they said you don't have a credible threat of enforcement. New York attorney general is a plaintiff in a suit against one of my clients. There's no dispute about standing. There's also one in Illinois, one in Washington. California  have reasonable controls provisions. They're all currently being litigated. The only merits decisions that have come out are the district court decision in this case and the New Jersey case where NSSF prevailed. That's currently being litigated. I will say the New York statute, perhaps because it was first, is the most obviously problematic. It's the only one that on its face allows knowing and reckless liability to be enough. It's the only one that on its face contains zero proximate cause requirement. It's the only one that combines those things with a private right of action. It's the only one that uses results in language that makes clear that all it's  is a but for cause. It's the only one where we know what the state wants to do with it because they've intervened as a  of it.